UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHAD BOCK,

            Plaintiff,                          Case No. 1:21-cv-175

v.                                                Honorable Sally J. Berens

MICHIGAN DEPARTMENT OF CORRECTIONS
HEALTH SERVICE et al.,

            Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has consented to the conduct of all proceedings in this case, including entry of final judgment and all post-judgment matters, by a United States magistrate judge. (Second Am. Compl., ECF No. 11, PageID.97.)

Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's second amended complaint for failure to state a claim.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the MDOC Health Service, as well as Registered Nurses Christopher Dankert, Jack Bellinger, and Melissa Lewis.

The complaint presently before the Court is Plaintiff's third.  His initial complaint consisted of "46 pages of disorganized, rambling, repetitive, and frequently conclusory allegations concerning Defendants' alleged failures to provide him medical care for the significant pain in his shoulder and attending weakness in his arm and hand, which he has suffered for more than a year." (Order, ECF No. 8, PageID.87.)  The Court directed Plaintiff to file an amended complaint on the court-approved form with the following specific instructions:

> The amended complaint will take the place of the original complaint, so it must include all of the Defendants that plaintiff intends to sue and all of the claims that Plaintiff intends to raise.
>
> **The amended complaint shall not exceed 30 pages and shall not repeat allegations.  Plaintiff shall allege, in chronological order, what each Defendant did or did not do on each date.**  Plaintiff is reminded that "[a] pleading that states a claim for relief must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Sixth Circuit Court of Appeals recently noted in *Kensu v. Corizon Inc. et al.*, No. 21-1083 (6th Cir. July 20, 2021), "[e]ach allegation must be simple, concise, and direct." *Id.*, slip op. at 4.

(Order, ECF No. 6, PageID.81) (emphasis in original).

Plaintiff filed his first amended complaint on August 13, 2021.  (First Am. Compl., ECF No. 7.)  The factual allegations in the first amended complaint consisted of a single paragraph. The complaint did not allege "what each Defendant did or did not do on each date."  It named only the MDOC Health Service as a defendant.  It noted that Plaintiff saw a nurse during March of

2

2020, sent a kite during July of 2020, and talked to nursing staff when they passed out medications about his shoulder.  (*Id*., PageID.84.)  During the first contact, Plaintiff was told he had a strained muscle; his later communications prompted the response that due to COVID-19, "they" were unable to see Plaintiff.  (*Id*.)

Because the first amended complaint stated no specific factual allegations against any individual defendant, the Court informed Plaintiff that the amended complaint was wholly insufficient.  (Order, ECF No. 8, PageID.88.)  The Court again directed Plaintiff to amend his complaint and, therein, to "allege, in chronological order, what each Defendant did or did not do on each date."  (*Id.*)  The Court also informed Plaintiff that no further amendments would be allowed.  Plaintiff filed his second amended complaint on November 29, 2021.  (Second Am. Compl., ECF No. 11, PageID.97.)

In the second amended complaint, Plaintiff alleges that on February 12, 2020, he submitted a health care kite concerning pain in his right shoulder.  (*Id*., PageID.96.)  Plaintiff saw Defendant Bellinger on February 19, 2020.  (*Id.*)  Defendant Bellinger examined Plaintiff's shoulder and informed him that he had a strain.  (*Id.*)  Defendant Bellinger directed Plaintiff to rest, stretch, and take ibuprofen and Tylenol, both of which he supplied to Plaintiff.  (*Id.*)  Plaintiff took the recommended actions "for the next few days."  (*Id.*)  On February 24, 2020, Plaintiff saw Defendant Dankert for a follow-up appointment.  (*Id.*)  Plaintiff told Defendant Dankert that he was still experiencing pain, but that the ibuprofen and Tylenol were helping.  (*Id.*)  Defendant Dankert told Plaintiff that if he continued to experience pain, he should submit another kite to have his shoulder examined again.  (*Id.*)  Plaintiff avers that for "the next few months," his shoulder "[was not too] bad" and that he "[was not] doing much with it."  (*Id.*)

3

On July 16, 2020, Plaintiff submitted another kite to health care, stating that he was experiencing pain, loss of strength, and limited range of motion in his shoulder. (*Id.*; ECF No. 1-1, PageID.49.) He received a response from Defendant Lewis that same day, indicating that health care was "only seeing urgent and emergent appointments" because of the COVID-19 state of emergency. (ECF No. 1-1, PageID.49.) Defendant Lewis told Plaintiff that if his symptoms worsened or he believed that the situation was urgent or emergent, he should contact health care immediately. (*Id.*) She told him that he could stretch and take Tylenol and Motrin for the issue. (*Id.*) Plaintiff alleges that over the next few weeks, he asked Defendant Dankert and other nursing staff to have his shoulder looked at, but he was told that they could not do anything unless he was "[dying]." (ECF No. 11, PageID.96.) Plaintiff avers that staff could not even provide Motrin or Tylenol. (*Id.*, Page.ID 96, 98.) According to Plaintiff, he still has not been seen. (*Id.*, Page.ID 98.)

Plaintiff seeks $50,000.00 in damages, as well as an examination of his shoulder by a professional. (*Id.*, PageID.97.) He also requests that any care that he requires for his shoulder, including rehabilitation, be paid for. (*Id.*) Finally, Plaintiff asks that he be able to stay at OCF "until [he asks] to move." (*Id.*)

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

4

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **Claims against the MDOC Health Service**

As noted *supra*, Plaintiff has named the MDOC Health Service as a Defendant in this matter. Plaintiff, however, cannot maintain a Section 1983 action against the MDOC Health Service. Regardless of the form of relief requested, the states and their departments are immune

5

under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Likewise, the MDOC Health Service is a subdivision of the MDOC and, therefore, is absolutely immune from suit under Section 1983. *See Coston v. Corizon, Inc.*, No. 1:17-cv-249, 2017 WL 1206263, at *2 (W.D. Mich. Apr. 3, 2017). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Thus, Plaintiff's claims against the MDOC Health Service must be dismissed because this Defendant is entitled to Eleventh Amendment immunity.

    **B.    Eighth Amendment**

Plaintiff contends that Defendants Bellinger, Dankert, and Lewis denied him medical care. Construed liberally, Plaintiff's allegations suggest that Defendants may have violated Plaintiff's Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment

obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be

7

consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

> mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 604-05 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

9

fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.     **Defendant Bellinger**

With respect to Defendant Bellinger, Plaintiff alleges that he saw Defendant Bellinger on February 19, 2020, and that Defendant Bellinger examined his shoulder and diagnosed him with a strain. (ECF No. 11, PageID.96.) Defendant Bellinger told Plaintiff to rest and stretch and provided him with Tylenol and ibuprofen. (*Id.*) Plaintiff acknowledges that the treatment recommended by Defendant Bellinger was at least somewhat effective in that "the [i]buprofen and Motrin w[]ere helping with the pain" and "for the next few months it wasn't to[o] bad." (*Id.*) Plaintiff does not allege any further contact with Defendant Bellinger regarding his treatment.

Based on Plaintiff's second amended complaint, Defendant Bellinger responded to Plaintiff's complaints about his shoulder by providing appropriate care. Plaintiff, therefore, does not state an Eighth Amendment claim against Defendant Bellinger because he does not allege facts showing that Defendant Bellinger was deliberately indifferent to a serious medical need.

### 2.     **Defendant Lewis**

Plaintiff alleges that Defendant Lewis responded to his July 16, 2020 kite regarding medical care by informing him that he could not be seen because of the COVID-19 state of emergency. (*Id.*) Plaintiff's exhibit indicates that Defendant Lewis recognized that Plaintiff's shoulder issue was "ongoing" and advised him to stretch and take Tylenol and Motrin. (ECF No. 1-1, PageID.49.)[1] She indicated that Plaintiff should contact health care immediately if his symptoms worsened, or he believed that his situation had become urgent or emergent. (*Id.*)

---

[1] When the Court directed Plaintiff to file an amended complaint, the Court informed Plaintiff that the amended complaint would take the place of the original complaint. The Court also informed Plaintiff that he did not need to re-submit exhibits, and he did not. Therefore, the Court relies on the exhibits Plaintiff attached to his initial complaint as part of Plaintiff's second amended complaint.

10

Defendant Lewis recommended the same treatment for Plaintiff's complaint that Defendant Bellinger offered with some success five months earlier. That response hardly rises to the level of the "obduracy or wantonness." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). Plaintiff's allegations fail to show that Defendant Lewis was deliberately indifferent to a serious medical need.

### 3. Defendant Dankert

Finally, Plaintiff alleges that he saw Defendant Dankert on February 24, 2020, for a follow-up appointment. (ECF No. 11, PageID.96.) During that appointment, Plaintiff told Defendant Dankert that Motrin and ibuprofen were helping with his shoulder pain. (*Id.*) Defendant Dankert told Plaintiff to submit another kite if he continued to have issues. (*Id.*) There is nothing in Plaintiff's allegations regarding his contact with Defendant Dankert during February of 2020 that even hints at deliberate indifference to a serious medical need.

The only other allegation involving Defendant Dankert is the following:

> Over the next few weeks [after Plaintiff's July 2020 contact with Defendant Lewis,] I asked Christopher Dankert and a few other nursing staff about getting it looked at and the only response I rece[i]ved was that unless I was [dying] they couldn't do anything. They couldn't even give me any Motrin or Tylenol.

(*Id.*, PageID.96, 98.) Plaintiff's use of the collective "they" fails to plausibly suggest that Defendant Dankert was personally involved in the decision to not see Plaintiff unless his condition was life-threatening or to not provide more Tylenol and Motrin to Plaintiff. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally

11

involved in or responsible for each alleged violation of rights). Plaintiff's references to Dankert and others collectively is precisely the same defect that rendered his first-amended complaint insufficient and that prompted the Court to provide Plaintiff another opportunity to allege his claims.

Plaintiff also alleges that he has not received care even following the summer of 2020; but his allegations do not support the inference that any of these Defendants denied him care. Under these circumstances, Plaintiff's allegations fail to show that Defendant Dankert was deliberately indifferent to a serious medical need. Thus, Plaintiff has failed to state an Eighth Amendment claim against Defendants Bellinger, Lewis, or Dankert.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court declines to certify that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: January 26, 2022           /s/ Sally J. Berens
                                                       SALLY J. BERENS
                                                       U.S. Magistrate Judge